The Akron Auto Finance Co., Appellant, *v.*
Stonebraker, Sr., Appellee.

(Decided February 21, 1941.)

*Messrs. Bailey & Bailey,* for appellant.
*Mr. Stanley Denlinger,* for appellee.

Washburn, J.   The controversy in this case grows out of a written contract which it is difficult to specifically classify, and which is as follows:

"Cognovit Note and Chattel Mortgage
"$455.57   Akron, Ohio, March 13, 1940.

"For value received I, we or either of us, the undersigned and hereinafter also called the Mortgagor, jointly and severally promise to pay to the order of The Akron Auto Finance Company, hereinafter also called the Mortgagee, at its office in Akron, Ohio, the sum of ($455.57) Four Hundred Fifty-five and 57/100 Dollars, together with a charge, including interest, of three per cent. per month from date hereof, computed on unpaid monthly balances of principal hereof up to $300.00 and eight per cent. per annum, payable monthly, on that part of any unpaid monthly balances of principal hereof over $300.00 until fully paid. Said principal sum, charges and interest to be due and payable in 1 @ $51.70, and 23 monthly installments of $23.50 each, beginning on the 18th day of April, 1940, which payments include charges and interest as aforesaid. From any payment made, charges and interest as aforesaid on the unpaid balance of the amount loaned, shall be deducted, and the balance of any such payment shall be applied on the unpaid principal of this obligation bearing the lowest charge including interest, until paid.

"Upon default of payment of any installments or interest becoming due hereunder or any breach of any of the covenants of the mortgage given simultaneously as a part and as security hereof, then all of the remaining installments and interest accrued shall at once become due and payable without demand or notice, said notice and demand being hereby expressly waived. The makers, endorsers, undersigned and guarantors of this note severally waive demand, protest and presentment for payment and notice of nonpayment and protest, without prejudice to the holder. I, we, any or either of us, the undersigned, hereby authorize and empower any attorney-at-law to appear for us, any or either of us, in an action on this note at any time after the same becomes due as herein provided, in any Court of Record, Justice of the Peace,

or Magistrate having authority to render judgments in or of the State of Ohio; to waive the issuing and service of process against us, and any or either of us, and after pleading or declaration filed, confess judgment in favor of the legal holder of this note against us, any or either of us, for the amount due with interest provided, and cost of suit. All signers hereto are principals and agree that credit has been extended to the undersigned by payee as evidenced by this note, based upon the statement given by the undersigned simultaneously upon a certain separate application for this loan made and signed by the undersigned and to which especial reference is made.

"In consideration of the sum designated above, receipt of which is hereby acknowledged, and to secure the payment of the foregoing obligation, or any other instrument or evidence of indebtedness given as payment, extension or substitution of or for the within obligation, I, we, the Mortgagor, hereby grant, bargain, sell, assign and mortgage unto the Mortgagee, all of the personal property listed below or listed on the sheet attached hereto and made a part hereof, complete with all attachments and equipment together with all future added and substituted parts and equipment and improvements, all of which we guarantee to be free and clear and unencumbered in any manner except ....................................None. Property located at 547 Bell street, Akron, Ohio, and described as follows:

| "New or Used | Kind of Property—Make, etc. | Year Model |
|---|---|---|
| Used | Ford | 1937 |
| | Radio & Heater | |
| "Body—Style | Motor No. | Factory Serial No. |
| Dlx cab | 18-3455284 | |

"*To have and to hold* the chattels and property above

granted, together with all future added and substituted parts and equipment, unto the said mortgagee, his heirs and assigns. The conditions of this mortgage are such that whereas the mortgagor has executed and delivered unto the mortgagee the promissory note hereinabove, payable in installments as above stipulated, now if said mortgagor shall well and truly pay said promissory note according to the terms and tenor thereof, together with interest as provided, and shall perform all other things herein required to be performed (*time being the essence of this contract, and the acceptance of any payment after the same is due shall not be considered to waive this provision*), then this contract shall be null and void, otherwise to be and remain in full force and effect in law.

"The 'Mortgagor' covenants and agrees to take the best care of the property and keep it under shelter and in first class condition and order at all times, not to part with the possession of the property or to remove it from this county or state or to hypothecate, sublet or hire out the property without the written consent of the 'Mortgagee,' and to produce and exhibit the property to the 'Mortgagee' or his agent upon request at any time and not to commit any waste upon or misuse the property and not to sell, encumber, secrete, convert the property nor to use or permit it to be used for or in any manner connected with the violation of any law.

"The 'Mortgagor' further covenants and agrees that if default be made in payment of the said note or of any installments thereof, or interest thereon, or in the performance of any of the covenants or conditions herein contained on the part of the 'Mortgagor' to be performed at the time and in the manner herein specified or if the property should be seized upon mesne or final process had against the 'Mortgagor' or if the 'Mortgagee' at any time before said amounts of money become due shall deem it necessary for the

more perfect and complete security of the claims of the 'Mortgagee' or should the 'Mortgagor' become a bankrupt or his property pass into the hands of an assignee, receiver, or trustee, or in case of death of the 'Mortgagor,' then, and in any such case, the 'Mortgagee' is hereby authorized and empowered to enter any premises of the 'Mortgagor' or other place where the property may be supposed to be, using force if deemed necessary (and no such entry or force shall be regarded as a trespass, or be treated as such, or be in any wise unlawful), and search for, seize and carry away, take and hold possession of the property without notice or demand and with or without legal procedure, said notice and demand being hereby expressly waived, and thereafter sell the property at public or private sale, with or without notice. The 'Mortgagor' hereby grants unto the 'Mortgagee' the right to become the purchaser of the property and out of the proceeds thereof to retain and pay the said note with interest and all other amounts that may become due under the terms and provisions of this contract, and to pay any and all liens that may be thereon, and to render the surplus money, if any, to the 'Mortgagor.' The 'Mortgagor' further covenants and agrees that if the unpaid balance on the note due to the 'Mortgagee' together with interest provided and all other amounts that may become due under this contract, shall not be realized by said sale, the 'Mortgagor' shall pay to the 'Mortgagee' such deficiency upon demand, and that a letter addressed to the last known address of the undersigned will be sufficient notice of such demand and for the amount shown due to the 'Mortgagee.'

''And the mortgagor hereby authorizes any attorney-at-law to confess judgment in favor of the mortgagee or its assigns in the same manner and in the same courts as hereinabove in the note part provided for judgment by confession, and the mortgagor hereby

512

makes the same waiver of service by process, notice, etc., as hereinabove made.

"All the property hereinabove enumerated shall be at the risk of the 'Mortgagor' during the life of this contract and no loss thereon or damage thereto shall release 'Mortgagor' from the payment of any part of the said sum and interest, nor from the payment of any amounts which may become due under and by virtue of the conditions of this contract; and no waiver of any of the conditions of this contract to be performed and kept by the 'Mortgagor' shall be deemed to have been given under any circumstances by the 'Mortgagee' unless the same be in writing and signed by the 'Mortgagee,' and the 'Mortgagor' further agrees that this contract contains the entire agreement between the 'Mortgagor' and the 'Mortgagee,' and that no verbal agreement of whatsoever nature shall be binding, and the terms hereof are and shall be binding upon and shall be for the benefit of the heirs, executors, administrators, or successors and assigns of the 'Mortgagor' and the heirs, executors, administrators, or successors and assigns of the 'Mortgagee,' and all the signers hereto hereby acknowledge receipt of a full complete and correct copy of this contract and that the same has been fully and thoroughly read over by or to them, and especially covenants that the mortgagor's statement appearing on a certain separate application for this loan made and signed by the undersigned and to which especial reference is made, is true and correct in every respect.

"Except as herein provided, said Mortgagor shall remain and continue in possession of said personal property.

"*In Witness Whereof* the said Mortgagors have hereunto set their hands this 13th day of March, 1940.

"Signed in the presence of:

"................... Sign { Calvin E. Weber
"................... Here { Kalman Emil Weber
"...................      { Frank Stonebraker"

On the back of said written instrument are listed the following payments:

| "Date | "Amount Paid | Applied on Interest | Applied on Principal | Balance Due |
|---|---|---|---|---|
| "4-26-40 | 23.50 | 14.38 | 9.12 | 446.45 |
| "5-14-40 | 51.70 | 5.98 | 45.72 | 400.73 |
| "6-28-40 | 23.50 | 14.17 | · 9.33 | 391.40 |
| "7-29-40 | 23.50 | 9.92 | 13.58 | 377.82 |
| "9- 3-40 | 23.50 | 10.78 | 12.72 | 365.10 |
| "10-21-40 | Sale of car $250.00 | | | 115.10 |

The balance due after allowing said credits was $115.10 on October 21, 1940.

There is also endorsed on the back a chattel mortgage affidavit, provided for by law, and the instrument was filed for record in the clerk's office on March 18, 1940.

The signers of the instrument are just two men: One being Calvin E. Weber, also described as Kalman Emil Weber, and the other being Frank Stonebraker, Sr.

The signer by the name of Weber was called into the military service of the United States.

Thereafter the plaintiff finance company named in said written instrument took possession of the automobile described in the instrument, and, without any legal process whatsoever, and by means of some sort of sale of the automobile, determined that there should be endorsed as a payment on the instrument the sum of $250 for the car, and thereafter the finance company, treating the written instrument as, among other things, a negotiable instrument with warrant of at-

torney attached, which authorized a judgment, either jointly or severally, against the signers of the instrument, filed a petition against Frank Stonebraker, Sr., alleging therein only that he signed the instrument, a copy of which was attached, and that there was due thereon a certain sum, with interest, for which judgment was asked.

With said petition was filed an answer by an attorney at law, confessing judgment under the warrant of attorney for the amount claimed in the petition; and also with the petition was filed an affidavit that Stonebraker was not in the military service. There was no service of summons upon Stonebraker, and, previous to the judgment, he was not before the court otherwise than by virtue of said warrant of attorney.

A judgment was entered against Stonebraker on the same day—December 7, 1940, the other party signing the instrument not having been made a party to the suit.

Upon the same day that judgment was entered, an order in aid of execution was issued upon affidavit being filed, the same being returnable December 18, 1940.

On or before December 19, 1940, Stonebraker appeared before the court and made a motion for an order staying the enforcement of the judgment, for the reason that Weber, the other signer of said instrument, was in the military service of the United States, and that the defendant, Stonebraker, signed the instrument for the accommodation of Weber and solely for the purpose of lending his credit to Weber.

At the hearing on the motion, the trial court found, as shown by its journal entry disposing of the motion, that Stonebraker received no part of the loan evidenced by said instrument, and signed the same solely for the purpose of extending his credit to Weber; that Weber was the principal, and that Stonebraker was an "accommodation maker."

The court also found that Weber was in the active service of the United States Army, and that, by virtue of the provisions of the Soldiers' and Sailors' Civil Relief Act, Stonebraker was entitled to the same relief against enforcement of the judgment that he would be entitled to had Weber been made a party to the action upon the instrument.

Under such finding, the court ordered that the collection of said judgment and the costs of said suit be suspended until the further order of the court.

The plaintiff finance company excepted to said order, and filed a motion for a new trial, which was overruled, and then, within due time, filed notice of appeal on questions of law to this court. The matter is before this court on the question as to whether the stay of execution granted by the trial court should be allowed to stand.

It is conceded that, if the proceedings in this case were against Weber, the other signer upon the instrument, the trial court had the right, under the authority of the Soldiers' and Sailors' Civil Relief Act of 1940, recently enacted by Congress, to make the order suspending all proceedings to enforce the collection of the judgment as against Weber.

It is the claim of the defendant, Stonebraker, that by said act the court had authority to make the order of suspension in his favor.

That act provides (Section 103) that:

"(1) Whenever pursuant to any of the provisions of this Act the enforcement of any obligation or liability, * * * or enforcement of any order * * *, judgment, or decree * * *, may be stayed, postponed, or suspended, such stay, postponement, or suspension may, in the *discretion* of the court, likewise be granted to sureties, guarantors, endorsers, and others subject to the obligation or liability, the performance or enforcement of which is stayed, postponed, or suspended." (Italics ours.)

It is the contention of the plaintiff finance company that, as a matter of law, Stonebraker is not, as to the instrument in question, a surety, guarantor or indorser, but on the contrary a principal, and is primarily liable under Sections 8165 and 8296, General Code.

Such claim is bottomed upon the assumption that said written contract is a negotiable instrument.

We will consider whether that claim is justified.

Under the Negotiable Instruments Law, negotiable notes and bills were designed to circulate freely and to take the place of money in commercial transactions, and a sound policy would seem to dictate that they should be in form as concise as possible, and that the obligation assumed by the maker or makers should be expressed in plain and simple language; for if negotiable contracts should be burdened with all sorts of collateral engagements, they could and would be used for the purpose of entrapping the inexperienced and unwary into agreements against which the law would afford them no redress in the hands of a holder in due course and without notice.

It is true that the simple, short instruments of early custom in commercial relations have grown into elaborate documents, containing collateral undertakings; and in respect of these innovations the American courts have been much divided in opinion as to whether they destroy the negotiability of such instruments, and it is impossible to reconcile their decisions. But as to some of such innovations, the better reasoned decisions, promoting a sound public policy, are to the effect that such innovations render the instruments non-negotiable.

The Uniform Negotiable Instruments Act was designed to free negotiable instruments, as far as possible, from all latent or local infirmities that would otherwise inhere in them, and to establish a uniform system of law to govern negotiable instruments and to

furnish a more certain guide for the determination of all questions covered thereby relating to commercial paper; and to that end the act provides, in reference to negotiability, the following: "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable." Section 8110, General Code. This is the general rule; and then there are stated in said section certain exceptions —which are: Provision for the sale of collateral securities; authorizing confession of judgment; waiving certain laws; and a provision which gives to the holder an election to require something to be done in lieu of the payment of money.

Before said enactment, there was great conflict in the decisions as to what promises and provisions when added to a simple promissory note would render the note non-negotiable, and one of the purposes of said enactment was to make the determination of that question dependent upon the interpretation of the language of the statute instead of upon a consideration of the formerly conflicting decisions on that subject; and the words used in the statute are to be given their natural and common meaning.

The question has been perplexing not only to the commercial world but to courts and lawyers. The statute should be regarded as the establishment of a public policy on the subject, and it seems to this court that that public policy is apparent from the simple and easily understood words of the statute: and that is, to restrict the character of permissible collateral undertakings in negotiable instruments strictly to those of the class enumerated in said exceptions, and to render non-negotiable a note containing other promises to do acts "in addition to the payment of money."

The contract involved in the case at bar contains language which, if considered by itself, would be construed as constituting a negotiable instrument, but it also contains a provision that the signers agree that

the credit extended was based upon a statement simultaneously given by the signers upon a certain separate application for the loan, and to which "special reference is made."

Said single writing also contains language which, by itself, would be considered to constitute a mortgage, and contains a provision that the mortgagor covenants and agrees to take the best of care of the property mortgaged, to keep it under shelter and in first-class condition and not to part with its possession, to produce and exhibit the property whenever the mortgagee requests, not to use or permit it to be used for or in any manner connected with the violation of any law, and contains a covenant that the mortgagor's statement in his application for the loan, to which special reference was made, is true and correct in every respect.

The contract also provides that, upon the default of payment of any installment of principal or interest, or *any breach of any of the covenants of the mortgage,* then all of the remaining installments and interest accrued shall at once become due and payable, without demand or notice.

As has been said, the contract provides that the sum specified shall be paid, together with a charge, including interest, of 3 per cent a month, from date thereof, computed on unpaid monthly balances of principal up to $300, and 8 per cent per annum, payable monthly, on that part of unpaid monthly balances of principal over $300, and that said "sum, charges and interest [are] to be due and payable in one payment of $51.70, and 23 monthly installments of $23.50 each."

As shown by the copy hereinbefore set out, said contract, containing the provisions mentioned and many others, is a single document, signed only at the end thereof.

We will consider another matter having to do with the question of the negotiability of said contract, and

that is the matter of certain statutes governing the making of small loans.

Inasmuch as the contract hereinbefore referred to provides for interest at 3 per cent a month and contains other provisions allowable only under Section 6346-5, General Code, which appears as a part of chapter 25 of Throckmorton's General Code, and as a part of chapter 25a of Page's General Code, comprising Sections 6346-1 to 6346-13, inclusive, General Code, regulating the business of making small loans, it is apparent that the plaintiff finance company is operating under the provisions of said chapter.

Said chapter provides for the licensing by the commissioner of securities of any person, firm, partnership, association or corporation, to conduct the business of making small loans, and that such business shall be conducted under the supervision of said commissioner, and contains innumerable provisions intended to protect borrowers dealing with such licensees, and gives the commissioner power to enforce all of the provisions of said chapter and see to it that none of the provisions thereof protecting the borrower shall be violated; and it is apparent from the provisions of the chapter that that can be accomplished only in the event that the contracts made in accordance with the provisions of the chapter are not held by bona fide holders in due course under the Negotiable Instruments Act.

There are many provisions in said licensing chapter intended to protect the borrower, which he would be deprived of if the contract were negotiable under the Negotiable Instruments Act. One illustration is that, under the licensing chapter, if the interest, consideration or charges made in the transaction by the finance company be in excess of those permitted by that act, "the contract and all the papers in connection therewith shall be void and the licensee shall have no right to collect or receive any principal, interest or charges

whatsoever''; whereas, if the contract is negotiable, and excessive interest is charged or excessive charges are made, such as the exaction of a bonus or a usurious amount of interest, and it is in the hands of a bona fide holder without notice of such usurious exaction, the borrower is without remedy as against such bona fide holder.

In the case at bar, it is apparent that, including the judgment, the amount payable is $529.21 to discharge a debt purporting to be $455.57. If, because of the manner of figuring, that amount is more than the plaintiff finance company was entitled to under the law when the debt was paid within six months instead of two years, as stipulated in the contract, then usury was exacted, and if the contract was negotiable, the borrower would be without remedy against a bona fide holder without notice of such usury exaction. Section 8307, General Code.

In said chapter 25 (25a) it is made the duty of the commissioner to investigate the business and affairs of the licensee, and the act provides that, for that purpose, he shall have free access to the vaults, books and papers of the licensee, and other sources of information with regard to the business of the licensee, and his supervision extends throughout the period of the existence of each contract; and it is also made his duty to notify the proper prosecuting officer of any violation by the licensee of any of the provisions of the act designed to protect the borrower, and to act as complainant in the prosecution thereof.

The negotiation of such contracts would deprive the borrower of these protections.

From a consideration of said chapter in its entirety, it is inconceivable that it was the intention of the Legislature to make the contracts with borrowers made in accordance with said law, negotiable instruments.

It is also doubtful if any reputable business concern

having access to legal advice would discount such contracts.

A study of the various cases bearing upon the question of the negotiability of contracts, and a consideration of the aforementioned Small Loan Act under which said contract was made, leads us to the conclusion that said contract contains promises to do acts in addition to the payment of money of such a nature as to render it non-negotiable, and that the liability of the signers thereof is not fixed by the Negotiable Instruments Act, and that their liability is therefore that which attaches to the signers of non-negotiable contracts.

The right to make contracts stipulating for interest in excess of 8 per cent and to enforce said contracts is a right specially conferred by said act by the Legislature, and the Legislature has authority to declare that such contracts shall be not only non-negotiable but nonassignable, and to require that such contracts contain on their face a notice to that effect.

A consideration of the whole subject, made necessary in determining this case, leads the court to the conclusion that, for the purpose of affording protection not only to borrowers but to the public in general, the Legislature ought to exercise its right so to do.

The entry of judgment against Stonebraker was not questioned by him in the trial court, and, in view of the state of the record, cannot be questioned by him in this court.

In the trial court, Stonebraker asked for no relief except the stay of the collection of the judgment, and that was granted; and, if that order of stay be approved, he can obtain no other relief in this court in this appeal on questions of law.

The trial court found that Stonebraker signed said contract without receiving value therefor and for the purpose of lending his credit to Weber, and, there being no bill of exceptions, and we having found that the

contract is not a negotiable instrument, that finding of fact by the trial court must stand.

Did the trial court err in determining that one signing such a contract without receiving value therefor and for the purpose of lending his credit to another, is included within the description ''sureties, guarantors, indorsers, *and others subject to the obligation or liability*,'' as used in said act of Congress? (Italics ours.)

We think that such a signer is one of the general class, kind or nature known as ''sureties or guarantors'' specifically enumerated in said act of Congress, and therefore is included in the ''others'' mentioned therein, and that therefore the order of stay should be approved.

We find no prejudicial error, and the judgment granting the stay is affirmed.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.